## UNION TRUST CO. OF NEW JERSEY v. VAN SCHAICK.

(Supreme Court, Appellate Division, First Department.   May 23, 1913.)

1. GUARANTY (§ 36*) — AGREEMENTS CONSTITUTING — CONSTRUCTION OF CONTRACT.

A contract between a number of parties, designated as "underwriters," and a party called the "syndicate manager," provided that the underwriters agreed to subscribe for the shares of treasury stock of a corporation set opposite their names and to transfer them to the syndicate manager, that they agreed to pay therefor 25 per cent. of the price upon call and the balance upon the maturity of a loan to be made to the syndicate manager, that the manager might negotiate a loan for three-fourths of the price of the stock, secured by a pledge of the stock in behalf of the underwriters severally in proportion to their subscriptions and by delivery of the agreement "as evidencing the subscribers' several guaranties of repayment of loans," that the syndicate manager should have all the power and authority of the underwriters, that the right and power to enforce the agreement was vested exclusively in the manager, who alone should have the right to enforce payment of the obligations assumed by the parties, and with whom it should be optional to proceed, upon default by any subscriber, to collect and deprive him of any right of participation in the benefits of the agreement, and that the amount raised by the loan and by the payments by the subscribers should be applied in payment of the stock. Plaintiff loaned the syndicate manager three-fourths of the price of the stock, under an agreement that he would execute a promissory note therefor, secured by a deposit of the stock and by an assignment of the agreement with the underwriters. *Held*, that the two agreements should be construed as one, the first being incomplete and having as one purpose the raising of the loan, and that when so construed the underwriters guaranteed the payment of the loan made by plaintiff to the syndicate manager.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 38–45; Dec. Dig. § 36.*]

2. JOINT ADVENTURES (§ 7*)—LIABILITIES AS TO THIRD PERSONS.

Independent of the guaranty, a subscriber was liable to plaintiff on his agreement to pay for the stock, it being implied that he was to pay the party who furnished the money to complete the purchase, and, even if this was not so, the syndicate manager, upon whom was conferred all the power and authority of the underwriters, having expressly agreed to repay the loan, and the provision vesting power to enforce the contract exclusively in the syndicate manager not divesting him of the right to assign, nor preventing enforcement by the assignee.

[Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. § 8; Dec. Dig. § 7.*]

3. PLEADING (§ 311*)—COMPLAINT—EXHIBITS—IDENTIFICATION.

Where exhibits annexed to a complaint were clearly identified by the allegations of the complaint, the transposition of the letters intended to designate such exhibits did not render the complaint defective.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 945; Dec. Dig. § 311.*]

4. CONTRACTS (§ 140*) — EFFECT OF ILLEGALITY — CONTRACTS TO PURCHASE STOCK—"TREASURY STOCK"—COLLATERAL AGREEMENT.

A contract between a number of persons to purchase treasury stock in a corporation was not invalid as between themselves, the manager of the syndicate, and the manager's assignee because of the failure to pay 10 per cent. at the time of the subscription, no questions between the corporation and its stockholders being involved, especially as "treasury

stock" implies that the stock has already been regularly issued and found its way into ownership by the corporation as one of its own stockholders.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 713–721; Dec. Dig. § 140.*]

**5.** PLEADING (§ 311*)—COMPLAINT—INCORPORATING EXTRINSIC PAPERS.

A contract, a copy of which was annexed to a complaint, was a part thereof, where the complaint recited that such copy was annexed thereto and made a part thereof.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 945; Dec. Dig. § 311.*]

Appeal from Special Term, New York County.

Action by the Union Trust Company of New Jersey against Eugene Van Schaick. From a judgment overruling a demurrer to the complaint, defendant appeals. Affirmed.

The complaint recited that a copy of the agreement between defendant, the other underwriters, and Vincent R. Schenck was annexed thereto and made a part thereof. The opinion of Justice Hendrick at Special Term was as follows:

Defendant demurs on the grounds that the complaint does not allege a cause of action and that plaintiff has no capacity to sue. Attached to the complaint as a part thereof is an agreement dated October 23, 1909, by the terms of which defendant subscribed for 25 of 1,200 shares of the capital stock of an agency company of the par value of $2,500, for which he agreed to pay $1,250. Other subscribers took the remainder of said 1,200 shares, all of which were 50 per cent. paid up. All these subscribers were parties to said contract under the name of "underwriters." The other party to the contract was one Vincent R. Schenck, called the "syndicate manager." The contract recited that the underwriters desired "to purchase 1,200 shares of the full-paid and nonassessable capital stock of the Northeastern Agency Company of New York, the par value of each share being $100, at $50 per share, and otherwise to deal in relation thereto through and by the 'syndicate manager' as their representative and as hereinafter provided." It was then agreed that all of the stock so purchased, except the qualification shares of the directors, should be transferred to the "syndicate manager" to be held pursuant to the agreement; that the subscribers should severally agree to purchase the number of shares of the Agency Company set opposite their names at $50 per share; that they "hereby agree to pay the several amounts" subscribed "25 per cent. upon call and the balance upon maturity of the loan to be made to the 'syndicate manager'"; that one-half of the shares may be sold by the syndicate manager at par; that the syndicate manager may negotiate a loan for $45,000, payable within two years, on his note, secured by a pledge of the stock, in behalf of the subscribers severally in proportion to their subscriptions, and by delivery of the agreement "as evidencing the subscribers' several guaranties of repayment of loans"; that the underwriters may withdraw their unsold shares on payment of the balance of their subscription; that Vincent R. Schenck is constituted syndicate manager, who "shall have all the power and authority of the underwriters"; that the agreement should become binding when all the stock should be subscribed; that it should end on December 31, 1911; that the syndicate manager may become a subscriber; that "the right and power to enforce this agreement when the same has become binding is hereby vested exclusively in the syndicate manager, who alone shall have the right to enforce payment of the obligations assumed by the parties hereto"; that if any subscriber shall fail to complete his payments when called upon by the syndicate manager it shall be optional with the manager to proceed to collect and deprive the party in default of any right of participation in the benefits of the agreement; that the $45,000 raised by loan

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and the $15,000 paid by the subscribers should be applied by the syndicate manager to payment of interest, expenses, working capital, and the remaining $50,000 to the "Northeastern Agency Company in payment of its treasury stock"; and that the syndicate manager should be liable only to the underwriters. The complaint alleges that the stock was all subscribed for, that said agreement became binding and effective, and that on January 28, 1910, a contract was made between plaintiff and the syndicate manager, reciting the agreement of October, 1909, and containing the following provisions: Plaintiff will lend to the syndicate manager $45,000 on his promissory note at six months at 6 per cent. interest, with the privilege of one extension. The syndicate manager shall deposit the stock as security, "and will execute or cause to be executed the necessary and proper power of attorney and assignment in connection with the said capital stock as may be required by the said trust company, and shall also, and hereby does, assign, transfer, and set over as and for further and additional security for the payment of said note and loan unto the said trust company the said underwriting and undertaking and agreement  *   *   *  to the fullest extent of the undertaking and obligation on the part of the respective underwriters"; further, that the stock is fully paid, and the syndicate manager has full power to pledge the stock and assign the agreement. If any subscriber wishes to pay in full, the amount shall be turned over to plaintiff to be applied on the loan. The syndicate manager declares that the stock is worth $50 per share. He appoints plaintiff his true and lawful attorney to act as he might under the agreement of October, 1909, and agrees to do whatever else may be deemed necessary to assure plaintiff in its rights under the contract. The complaint alleges that the loan was made on said note, security, and contract; that the loan was 75 per cent. of the $60,000 agreed by the subscribers to be paid; that defendant agreed to pay 25 per cent. upon call and the balance on the maturity of said loan; that the sum unpaid, with interest, amounts to $937.50; that the loan and renewal thereof matured on January 28, 1911; that no payment has been made, although demanded; that plaintiff offers to defendant 25 shares of said stock on "receiving from him full payment of defendant's said guaranty, with interest thereon"; that defendant has made no payment, except 25 per cent.

[1, 2] Little remains to be added. The recital of the agreements and of the allegations of fact lead to one conclusion. The two contracts must be construed as one, executed by the subscribers, the syndicate manager, and the plaintiff. Without the second the first contract is incomplete. One purpose, if not its main purpose, was to enable the syndicate manager to raise a loan. Of the $1,250 which defendant agreed to pay, no part except 25 per cent. was due or payable until "the maturity of the loan," and the syndicate manager was authorized to pledge the stock "and may deliver this agreement to the lender as evidencing the subscribers' several guaranties of repayment of loans." Reading the two contracts as one to which plaintiff was a party, there is a plain guaranty of payment. It did not run to the syndicate manager. It was not inserted in the contract between him and the subscribers. It came into being on the delivery of the money borrowed, and ran direct from the subscribers to the lender. The demurrer admits the allegations that the syndicate manager was authorized to execute a loan agreement at discretion; that it was executed by him, and that the conditions on which the guarantors' liability should mature had all occurred. I am also of opinion that defendant is liable independently of the guaranty. He agreed to pay $1,250 for 25 shares of stock. The name of the payee is not specified, but the name of the lender is plainly implied. Whoever that might be was to furnish $45,000 of the $60,000 required to complete the purchase of the stock. Without that implication the same result follows; for it was competent for the subscribers to make an express promise of repayment, and that was done by the syndicate manager, upon whom was conferred "all the power and authority of the underwriters." He agreed with the lender to repay the sum advanced on the purchase price, and that sum represented the sum due and unpaid on the subscriptions.

Two clauses of the contract of October, 1909, may seem inconsistent with the view just expressed. They provide that power to enforce that contract

is vested exclusively in the syndicate manager, with whom it shall be optional "to proceed to collect said amount due hereunder by the party or parties in default and deprive the party so in default of the right of any participation whatever in this agreement or in the benefits to be derived therefrom." When a promissory note payable to A. is delivered, the sole right of enforcement is vested in him. But that fact does not divest him of the right to assign nor prevent enforcement by the assignee. Those clauses of the contract may relate to the right to enforce payment of the 25 per cent., for that payment only was to be made to him. It may relate to the enforcement of the subscribers' contract as among themselves. But it cannot be construed to nullify the assignment of the contract, for such construction would defeat almost the entire purpose of the transaction.

[3] The letters "A" and "B" standing at the head of the two exhibits annexed to the complaint might have been dispensed with. They were clearly identified by the allegations of the complaint. The letters, therefore, were immaterial, and their transposition could not be misleading. To condemn a pleading for such a harmless variance would violate the spirit of the Code.

[4] Nor is the point well taken that defendant did not subscribe for the stock, because he did not pay 10 per cent. at the time of the subscription. Questions between the corporation and its stockholders are not at issue. And, besides, those 1,200 shares were "treasury stock," which implies that they had already been regularly issued and found their way into ownership by the corporation as one of its own stockholders.

[5] Finally, defendant argues that the contracts are not a part of the complaint, and therefore there is no allegation of a cause of action. The following authorities seem to be opposed to that contention: Jones v. Gould, 123 App. Div. 236, 108 N. Y. Supp. 31, Spence v. Woods, 134 App. Div. 182, 118 N. Y. Supp. 807, and Nat. Bank v. Toplitz, 178 N. Y. 464, 71 N. E. 1.

I conclude that plaintiff is the real party in interest, and that the demurrer should be overruled, with leave to defendant to withdraw the demurrer and plead over on the usual terms.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, SCOTT, MILLER, DOWLING, and HOTCHKISS, JJ.

S. P. Anderton, of New York City, for appellant.
W. B. Brice, of New York City, for appellee.

PER CURIAM. Judgment affirmed, with costs, with leave to defendant to withdraw demurrer and to answer on payment of costs, on the opinion of Hendrick, J.

Order filed.

---

(80 Misc. Rep. 638.)

## FAGAN v. RAYMOND MFG. CO.

(Supreme Court, Appellate Term, First Department. May 22, 1913.)

COURTS (§ 188*)—INFERIOR COURTS—CITY COURT OF NEW YORK—JURISDICTION—WARRANT OF ATTACHMENT.

Under Code Civ. Proc. § 682, authorizing applications to vacate or modify a warrant of attachment after property has been attached, the City Court of New York, issuing a warrant of attachment for a sum over $4,000 as demanded by the complaint, must reduce the amount of the warrant to $2,000, with interest and costs, the extent of its jurisdiction, and limit the liability of the sureties to that sum; but it cannot vacate the warrant for want of jurisdiction to issue it.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 439, 440, 442, 447, 448, 451, 452, 454, 458, 464, 465, 467, 468; Dec. Dig. § 188.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes